IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

JUAN L. JENKINS,
     Plaintiff,

vs.                                    Case No.: 5:12cv396/RH/EMT

ASST. WARDEN SLOAN, et al.,
     Defendants.
_____/

## REPORT AND RECOMMENDATION

     This prisoner civil rights case is before the court upon a Motion to Dismiss filed by Defendants L.P.N. Dixie McCorvey, Pam Miller, and Krystal Ake (ECF No. 74). The basis of the motion is the contention that Plaintiff has failed to exhaust all his available administrative remedies as to his claims. Plaintiff has responded in opposition to the motion (ECF No. 90).

     Plaintiff, an inmate of the Florida Department of Corrections (DOC) proceeding pro se, commenced this action on or about December 14, 2012, by filing a civil rights complaint under 42 U.S.C. §1983 (ECF No. 1). Plaintiff's Third Amended Complaint (ECF No. 37) is now the operative pleading and has been served on these three Defendants. Plaintiff, who currently resides at Santa Rosa Correctional Institution, claims that Defendants, medical and administrative employees at Gulf Correctional Institution where Plaintiff was previously incarcerated, were deliberately indifferent to his serious medical needs, in violation of his rights under the Eighth Amendment. As relief, Plaintiff seeks compensatory and punitive damages.

     The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters. *See* N.D. Fla. Loc. R. 72.2; *see also* 28 U.S.C. § 636(b) and Fed. R. Civ. P. 72(b). After careful consideration, the undersigned concludes that Defendants' motion should be granted and this case dismissed with prejudice.

I.      LEGAL STANDARDS

Title 42 U.S.C. § 1997e provides, in relevant part:  "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  Exhaustion of all available administrative remedies is a mandatory pre-condition to suit.  *See* Booth v. Churner, 532 U.S. 731, 739, 121 S. Ct. 1819, 149 L. Ed. 2d 958 (2001); *see also* Porter v. Nussle, 534 U.S. 516, 524–25, 122 S. Ct. 983, 988, 152 L. Ed. 2d 12 (2002) ("Beyond doubt, Congress enacted § 1997e(a) to reduce the quantity and improve the quality of prisoner suits; to this purpose, Congress afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case."); Parzyck v. Prison Health Serv., Inc., 627 F.3d 1215, 1217 (11th Cir. 2010).  The exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes.  *See* Porter, 534 U.S. at 524.  Exhaustion is required whether the plaintiff seeks declaratory and injunctive relief, monetary damages, or both.  *See* Booth, *supra* at 734.  The requirement is not subject to waiver by a court, or futility or inadequacy exceptions.  *Id.* at 741 n.6; McCarthy v. Madigan, 503 U.S. 140, 112 S. Ct. 1081, 117 L. Ed. 2d 291 (1992) ("Where Congress specifically mandates, exhaustion is required."); Alexander v. Hawk, 159 F.3d 1321 (11th Cir. 1998).

The law of the Eleventh Circuit is clear that the PLRA's exhaustion requirement requires proper exhaustion through the administrative grievance procedure created by the agency (here, the Florida DOC), including compliance with the agency's deadlines and other critical procedural rules.  *See* Johnson v. Meadows, 418 F.3d 1152, 1159 (11th Cir. 2005) (holding that § 1997e(a)'s exhaustion requirement contains "a procedural default component"—that is, prisoners must timely meet the deadlines or the good cause standard of administrative grievance procedures before filing a federal claim, and stating that without "the prospect of a dismissal with prejudice, a prisoner could evade the exhaustion requirement by filing no administrative grievance or by intentionally filing an untimely one, thereby foreclosing administrative remedies and gaining access to a federal forum without exhausting administrative remedies"); Brown v. Sikes, 212 F.3d 1205, 1207 (11th Cir. 2000) (holding that "when a state provides a grievance procedure for its prisoners, . . . an inmate alleging

harm suffered from prison conditions must file a grievance and exhaust the remedies available under that procedure before pursuing a § 1983 lawsuit"); Harper v. Jenkin, 179 F.3d 1311, 1312 (11th Cir. 1999) (per curiam) (holding that a prisoner did not exhaust available administrative remedies where he filed an untimely grievance without seeking leave, and failed to appeal the denial of his grievance); *accord* Woodford, 548 U.S. at 94 ("Requiring proper exhaustion . . . gives prisoners an effective incentive to make full use of the prison grievance process and accordingly provides prisons with a fair opportunity to correct their own errors.  This is particularly important in relation to state corrections systems because it is "difficult to imagine an activity in which a State has a stronger interest, or one that is more intricately bound up with state laws, regulations, and procedures, than the administration of its prisons.""); Woodford, 548 U.S. at 90–91 ("Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings).

In Bryant v. Rich, 530 F.3d 1368 (11th Cir. 2008), the Eleventh Circuit outlined the procedure district courts should follow when presented with a motion to dismiss for failure to exhaust.  The court held that the defense of failure to exhaust should be treated as a matter in abatement and not an adjudication on the merits. *Id*. at 1374–75.  "This means that procedurally the defense is treated 'like a defense for lack of jurisdiction,' although it is not a jurisdictional matter." Turner v. Burnside, 541 F.3d 1077, 1082 (11th Cir. 2008) (quoting Bryant, 530 F.3d at 1374). Because exhaustion is a matter in abatement, "it should be raised in a motion to dismiss, or be treated as such if raised in a motion for summary judgment." Bryant, 530 F.3d at 1374–75 (citation and internal quotation omitted).  Where exhaustion is treated as a matter in abatement and not an adjudication in the merits, it is proper for the district court to consider facts outside of the pleadings and resolve factual disputes so long as the factual disputes do not decide the merits, and the parties have sufficient opportunity to develop a record. *Id.* at 1376.

The Bryant court noted that it decided only the case before it: one where dismissal was without prejudice and where neither party evidenced that administrative remedies were absolutely time barred or otherwise "clearly infeasible."  530 F.3d at 1375 n.11.  The court then clarified, "We do not mean to say today that a failure to exhaust can never correctly result in a dismissal with

prejudice." *Id.* (citing Johnson, 418 F.3d at 1157, 1159) and Berry v. Kerik, 366 F.3d 85, 87–88 (2d Cir. 2004) (indicating that dismissal with prejudice would be appropriate where "administrative remedies have become unavailable after the prisoner had ample opportunity to use them and no special circumstances justified failure to exhaust")).

Deciding a motion to dismiss for failure to exhaust administrative remedies involves two steps. Turner, 541 F.3d at 1082. First, the court looks to the factual allegations in Defendants' motion, and those in Plaintiff's response, if any. *Id*. If they conflict, the court accepts Plaintiff's version as true. "If, in that light, the defendant is entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be dismissed." *Id.*; *see also* Bryant, 530 F.3d at 1373–74. If the complaint is not subject to dismissal at the first step, "the court proceeds to make specific findings in order to resolve the disputed factual issues related to exhaustion." Turner, 541 F.3d at 1082 (citing Bryant, 530 F.3d at 1373–74, 1376). "The defendants bear the burden of proving that the plaintiff has failed to exhaust his available administrative remedies." *Id*. Upon making findings on the disputed issues of fact, the court then decides whether, under those findings, the plaintiff has exhausted his available administrative remedies.

In opposing dismissal on grounds of exhaustion, an inmate may assert that he was unfairly prevented or thwarted from pursuing his administrative remedies, for instance in situations where prison officials fail to respond to an inmate's grievances or prevent grievances from being filed, in effect rendering the administrative remedy unavailable to the inmate. Tilus v. Kelly, 510 F. App'x 864, 866 (11th Cir. 2013) (citing Bryant, 530 F.3d at 1373 n.6). Another instance is where officials act in a retaliatory or threatening manner, effectively preventing the inmate from filing grievances. As the Eleventh Circuit held:

> We conclude that a prison official's serious threats of substantial retaliation against an inmate for lodging or pursuing in good faith a grievance make the administrative remedy "unavailable," and thus lift the exhaustion requirement as to the affected parts of the process if both of these conditions are met: (1) the threat actually did deter the plaintiff inmate from lodging a grievance or pursuing a particular part of the process; and (2) the threat is one that would deter a reasonable inmate of ordinary firmness and fortitude from lodging a grievance or pursuing the part of the grievance process that the inmate failed to exhaust.

Turner, 541 F.3d at 1085 (citations omitted).  Thus, the inmate must show both that the threat was objectively serious enough and that it actually did deter him.  Conclusory or unsupported assertions to that effect will not suffice.  Williams v. Barrow, 559 F. App'x 979, 987–88 (11th Cir. 2014) (finding inmate's conclusory allegation that "escalating retaliation" prevented him from exhausting his grievance remedies insufficient to avoid dismissal for lack of exhaustion); Tilus, 510 F. App'x at 866 (holding that detainee's contention that jail rules prohibited him from filing any grievances while under psychiatric watch was unavailing to defeat dismissal on grounds of exhaustion because he provided no evidence in support and jail rules themselves showed the opposite); Kozuh v. Nichols, 185 F. App'x 874, 877–78 (11th Cir. 2006) (dismissing prisoner's complaint on exhaustion grounds because there was no evidence from the inmate to support his arguments that he was thwarted by threats from bringing his grievances and that prison officials failed to respond to his grievances).

The grievance procedures promulgated for inmates of the Florida DOC[1] require an inmate to:  (1) file an informal grievance with a designated prison staff member, (2) file a formal grievance with the warden's office, and then (3) submit an appeal to the Office of the Secretary ("Central Office").  *See* Fla. Admin. Code  rr. 33-103.005 to 33-103.007; *see also* Parzyck, 627 F.3d at 1218. If an inmate is filing a medical grievance, he may bypass use of an initial informal grievance and begin his medical complaint with a formal grievance, submitted on Form DC1-303, at the institutional level.  *See* Fla. Admin. Code rr. 33-103.006(1), (3)(e), 33-103.008, 33-103.019.  If the inmate is dissatisfied with the result of the medical formal grievance (for example, if it is denied), the inmate is authorized to appeal to the Central Office.  *Id.* at r. 33-103.007(1).  If an inmate is filing an emergency grievance, a grievance of retaliation (known as a "grievance of reprisal"), or certain other special types of grievances, he may bypass use of informal and formal grievances and begin the process with a formal grievance or with a direct grievance to the Central Office.  *Id.* at rr. 33-103.006(3)(c); 33-103.007(6)(a), (b).  If an inmate files a direct grievance that bypasses the

---

[1] The court recognizes that its citations are to the current version of the Florida Administrative Code.  The court has reviewed the history of the code provisions cited herein, dating back to the time of the alleged events and Plaintiff's grievance filings, and has determined that there are no substantial differences in the procedural requirements set out in this Report.

informal and/or formal grievance process, he must clearly state the reason for bypassing the earlier step(s). *Id.* at rr. 103.006(4); 33-103.007(6)(a)2. Upon review of the grievance, if it is determined that the grievance is not an emergency grievance, grievance of reprisal, or grievance of a sensitive nature, the grievance must be returned to the inmate with the reasons for return specified and an advisement that the inmate resubmit his grievance at the appropriate level. *Id.* at rr. 33-103.006(5)(d); 33-103.014(1)(f); 33-103.007(6)(d).

The Florida DOC's grievance procedures also establish time frames for inmates to file grievances. A formal grievance must be received no later than 15 calendar days from the date of the response to the informal grievance, and a grievance appeal to the Central Office must be received within 15 calendar days from the date of the response to the formal grievance. *Id.* at rr. 33-103.011(1)(b), (c). When a grievance is filed at the formal grievance or at the Central Office level, as with the specialized grievances addressed above, it must be filed within 15 calendar days from the date on which the incident or action which is the subject of the grievance occurred. *Id.* at rr. 33-103.011(1)(b), (d).

The grievance procedure provides for an extension of the time frames as follows:

> (2) An extension of the above-stated time periods shall be granted when it is clearly demonstrated by the inmate to the satisfaction of the reviewing authority . . . or the Secretary that it was not feasible to file the grievance within the relevant time periods and that the inmate made a good faith effort to file in a timely manner. The granting of such an extension shall apply to the filing of an original grievance or when re-filing a grievance after correcting one or more deficiencies cited in Rule 33-103.014, F.A.C.

Fla. Admin. Code r. 33-103.011(2).

Under Rule 33-103.014, a grievance may be returned to the inmate without processing if it contains one of the enumerated deficiencies provided in the rule, one such deficiency being that the grievance did not include the required attachments. A formal grievance must have the informal grievance and response attached, and a grievance appeal must have the formal grievance and response attached. Fla. Admin. Code r. 33-103.014(1)(g). If the inmate did not provide a valid reason for bypassing the previous levels of review as required under Rule 33-103.007(6)(a) or the reason provided is not acceptable, a grievance may also be returned. Fla. Admin. Code r. 33-103.014(1)(f). An inmate who has a grievance returned to him for reasons stated in subsections (f)

or (g) may re-file the grievance correcting the stated deficiency within allowable time frames *Id.* r. 33-103.014(2). When a grievance is returned to an inmate for being improperly filed, the inmate shall be told why the grievance was returned and told that in order for him to receive administrative review of his complaint he must correct the defects and resubmit the grievance within the time frames set forth in r. 33-103.011, unless instructed otherwise in the grievance response. *Id.*

II.     FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff's complaint stems from an incident that occurred while Plaintiff was incarcerated at Gulf Correctional Institution in 2008 where a dining hall table fell on him, injuring his elbow, wrist, legs, and knees. Plaintiff claims, on an ongoing basis, that Defendants exhibited deliberate indifference to his serious medical needs as it relates to his injuries. Plaintiff questions the legitimacy or efficacy of the treatment he received. He alleges that Defendants failed to conduct proper physical or medical examinations to determine the extent of his injuries and that they refused his requests to be referred for consultations with medical specialists. He states that Defendants refused him hospital services when it became evident that his knee was seriously injured, although he acknowledges that orthopedic surgery was provided to him in September of 2009 and that in January of 2012, after he received an MRI examination, an orthopedic surgeon recommended a total knee replacement (ECF No. 37 at 9, 16).

Plaintiff also alleges that Defendants would not provide him sufficient accommodations for his injuries, for instance by only providing him with a walker instead of a wheelchair, and as a result, Plaintiff had difficulty in presenting himself to sick call. He relates one incident whereby he was forced to stand until his legs gave out, and he fell to the floor (ECF No. 37 at 31). Plaintiff also claims that this and other actions in which Defendants refused him treatment or accommodations for his injuries were taken in retaliation for the fact that Plaintiff was using the prison grievance process to complain about the inadequate medical care he was receiving.

In their motion, Defendants contend that Plaintiff failed to exhaust his available remedies as to all his claims and allegations because he never completed the exhaustion process by filing proper grievance appeals to the Central Office. As detailed by Defendants, Plaintiff filed numerous medical grievances between March 3, 2010, approximately fourteen months after the date of Plaintiff's accident, and July 6, 2012, five months before Plaintiff commenced the instant action on

December 6, 2012 (*see* ECF No. 74 at 9–14).  These grievances concerned varying aspects of his injuries and follow-up medical treatment such as his physical therapy regimen, medical treatment for his back, the denial or revocation of wheelchair and wrist splint passes, difficulty with his special "Brogan boots," and difficulties he was having with the sick call procedure (ECF No. 74-1 at 2–10).  Some of the grievances were labeled by Plaintiff as formal grievances but were filed on informal grievance forms.  All of these grievances were denied.[2]

On February 10, 2012, Plaintiff also filed a formal grievance that arguably concerned retaliatory actions taken against him (ECF No. 74-3 at 4).  Plaintiff complained in the grievance that Defendant Dr. Gilo had "vindictively" discharged him from the infirmary on March 4, 2010.  He also described a May 20, 2010, incident where he collapsed to the floor while being made to stand at his walker when he needed to sit, additionally claiming that Defendant Sloan helped to precipitate his fall by removing his hands from the walker (*id.*).  Plaintiff's objective in the grievance was to obtain the incident reports that Plaintiff claimed had been drafted as to each of the incidents (*id.*).  The grievance was returned to Plaintiff without processing because Plaintiff failed to attach a copy of his informal grievance and response; it was also stated that Plaintiff could resubmit a corrected formal grievance within the proper time frame under the rules, but this Plaintiff evidently did not do, nor did he apparently file a grievance appeal (ECF No. 74-3 at 1–3).[3]

Plaintiff filed three separate grievance appeals.  The first was submitted to the Central Office on February 19, 2010, and contained nineteen pages that recounted his accident in 2008 and his subsequent medical issues that arose through the time the grievance was filed  (ECF No. 74-4 at 4–19).  Plaintiff did not indicate on the grievance form that he was requesting to bypass the informal or formal grievance stages.  The grievance was returned to Plaintiff on March 1, 2010,  for his

---

[2] Defendants' argument in support of their motion is solely based on their assertion that Plaintiff failed to file proper appeal grievances concerning the claims raised in this action.  They do not assert that the grievance appeals that Plaintiff did file but were returned to him as deficient, as summarized *infra*, failed to comprehensively include all the claims in his complaint.  For that reason, the court sees no reason to itemize each of Plaintiff's precursor grievances in further detail.

[3] Though the grievance contained allegations of what could have been viewed as retaliatory actions, Plaintiff did not label the grievance as one of retaliation or reprisal, wherein he might have been able to bypass the informal grievance step.  Thus, it was evidently treated as an ordinary formal grievance and returned as such.

failure to attach a copy of the related formal grievance and response, and with instructions that Plaintiff would have 15 days to resubmit his grievance (ECF No. 74-4 at 3).

Plaintiff filed his second grievance appeal on February 24, 2010, a few days before he received the response to his first grievance appeal, stating that a wheelchair pass that had evidently been provided to him from the Reception and Medical Center (RMC) had been revoked by Defendant Gilo (ECF No. 74-4 at 21–22). As with his previous grievance, Plaintiff did not request to bypass the informal or formal grievance steps, and the grievance was returned to him for the same reason and under the same instruction that he could resubmit his grievance (*id.* at 20).

Plaintiff then filed his third grievance appeal on April 9, 2010, in which he attempted to re-file his first grievance appeal as identified above (ECF No. 74-4 at 31–57). As with the previous two, the third grievance was returned for the same reason and under the same conditions, stating specifically: "You still need to file a formal to the warden." (*id.* at 28). Plaintiff failed to follow up on this or either of the previous two grievance appeals that were returned to him.

III.    DISCUSSION

Defendants have satisfied their burden of proving Plaintiff failed to properly exhaust available administrative remedies prior to filing this federal lawsuit. In order for exhaustion to be complete, the Florida Administrative Code clearly requires the filing of a proper grievance appeal. As described above, Plaintiff filed grievance appeals, but they were returned to him because he had failed to file formal grievances on the matter or had failed to attach to his grievance appeal the formal grievance(s) and response(s). Plaintiff was given the opportunity to correct the deficiency but failed to do so.

In response to the motion to dismiss, Plaintiff states that he was subjected to retaliation because of his efforts to use the grievance system at the institution. Although Plaintiff does press a substantive claim for retaliation against Defendants, he does not specifically identify any actions that were taken against him with retaliatory animus as a way to prevent or deter him from filing his grievances, and more particularly his grievance appeals. As stated earlier, a broad, conclusory assertion of retaliation is insufficient to demonstrate that the grievance system was rendered effectively unavailable to Plaintiff. Moreover, as required under the Turner standard identified *supra*, one of the elements that Plaintiff must prove is that the retaliatory efforts actually prevented

him from filing grievances. Plaintiff does not meet this standard because he appears to have been freely able to access the grievance process, as the roster of his numerous grievances would evidence. Indeed, Plaintiff's failing was not because he was unable to file or was precluded from filing any grievance appeals. He in fact did file three times; his failure stemmed from his own lack of follow-up in correcting his procedural mistakes by filing subsequent, corrected grievances.

IV.  CONCLUSION

As it is clear that none of the claims that comprise Plaintiff's complaint were ever properly exhausted through the prison grievance system, the complaint in its entirety is subject to dismissal for failure to exhaust. Furthermore, because Plaintiff did not attempt to file or re-file any grievance appeals since 2010, more than two years before he filed the instant complaint, he is surely beyond the time for doing so, and for that reason the complaint should be dismissed with prejudice.

The court notes that the motion to dismiss was filed on behalf of Defendants L.P.N. Dixie McCorvey, Pam Miller, and Krystal Ake, but not Defendants Norma Gilo and Assistant Warden Sloan, both of whom had evidently not been served with process at the time the motion was filed. Nonetheless, Plaintiff will clearly be unable to maintain his claims against these remaining Defendants due to his failure to exhaust, as the complaint is wholly subject to dismissal for failure to exhaust and these additional Defendants are integrally associated with the Defendants who did file the motion. It is obvious that Plaintiff cannot proceed against the remaining Defendants because he cannot survive the exhaustion requirement in the first place. Accordingly, Plaintiff's claims against these Defendants will also be dismissed. *See* Loman Dev. Co. v. Daytona Hotel and Motel Suppliers, Inc., 817 F.2d 1533, 1537 (11th Cir. 1987) ("A District Court may properly on its own motion dismiss an action as to defendants who have not moved to dismiss where such defendants are in a position similar to that of moving defendants or where claims against such defendants are integrally related.") (quoting Silverton v. Dept. of the Treasury, 644 F.2d 1341, 1345 (9th Cir. 1981)); *see also* Bonny v. Society of Lloyd's, 3 F.3d 156, 162 (7th Cir. 1993).

Accordingly, it is respectfully **RECOMMENDED**:

1.      That the Motion to Dismiss filed by Defendants L.P.N. Dixie McCorvey, Pam Miller, and Krystal Ake (ECF No. 74) be **GRANTED**.

2.      That dismissal also be **GRANTED** as to Defendants Norma Gilo and Assistant Warden Sloan.

3.      That this case be **DISMISSED with prejudice** in its entirety for Plaintiff's failure to exhaust available administrative remedies.

4.      That the clerk be directed to enter judgment accordingly and close the file.

At Pensacola, Florida, this 28<u>th</u> day of October 2015.


<u>/s/ *Elizabeth M. Timothy*</u>
**ELIZABETH M. TIMOTHY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**


<u>**NOTICE TO THE PARTIES**</u>

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of objections shall be served upon all other parties.  If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**